**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| JOSHUA LEE HENDERSON and MEREDITH ASHLEY HENDERSON, | ) ) ) |
| **Plaintiffs,** | ) ) |
| v. | ) **CIVIL ACTION NO. 24-023-JB-M** ) ) |
| STATE FARM FIRE AND CASUALTY COMPANY, *et al.*, | ) ) ) |
| **Defendants.** | ) ) |

## ORDER

This action is before the Court on Defendant's Motion for Summary Judgment and brief in support thereof (Docs. 121 and 122), Plaintiffs' response (Doc. 144), and Defendant's reply (Doc. 150). A hearing was held on March 30, 2026, with counsel for both parties present. After careful consideration of the relevant filings and for the reason stated herein below, Defendant's Motion is **GRANTED in part and DENIED in part**.

### I.       Procedural and Factual Background[1]

This case arises from a residential homeowners' Hurricane Sally claim involving dwelling insurance coverage. (Doc. 144). Plaintiffs Joshua and Meredith Henderson owned a residence located at 9707 Silverwood Drive, Fairhope, Alabama ("the Property") (Doc. 122). On September 18, 2020, Plaintiffs reported a claim to State Farm for Hurricane Sally damage. (*Id*.). At the time

---

[1] Of note, Plaintiffs did not provide the Court with a summary of undisputed facts. Instead, Plaintiffs objected to the majority of the undisputed facts set forth in Defendant's motion because those facts were based on the Claim File and are, according to Plaintiffs, inadmissible hearsay. (Doc. 144). As a result, the facts dictated herein above are derived from Defendant's motion. However, the Court has limited the factual summary to only those facts which it understands as undisputed and relevant to the pending motion.

of Hurricane Sally, the Property was covered by an insurance policy issued by State Farm (the

"Policy"). (*See* 122-2). The Policy had a hurricane deductible of $10,095. (*Id*.). State Farm agreed

in the Policy to pay for "accidental direct physical loss" to the dwelling and other structures on

the Property (Coverage A) unless otherwise excluded or limited. (*Id*.).

Under the terms of the Policy, State Farm would pay the actual cash value (ACV) of the

damages to the Property until the actual repair or replacement was completed. (*Id*.). The actual

repair or replacement must be completed within two years of the date of the loss. (*Id*.). If

completed within two years and timely reported to State Farm, Plaintiffs would be entitled to the

replacement cost value (RCV) to the extent the amount necessarily spent for the covered repairs

exceeded the ACV amount estimated by State Farm. (*Id*.).  The term "actual cash value" is defined

in the Policy as follows:

> "***actual cash value***" means the value of the damaged part of the property at the time of the loss, calculated as the estimated cost to repair or replace such property, less a deduction to account for pre-loss depreciation. For this calculation, all components of this estimated cost including, but not limited to:
>
> a. materials, including any tax;
> b. labor, including any tax;
> c. overhead and profit; are subject to depreciation.
>
> The depreciation deduction may include such considerations as:
> a. age;
> b. condition;
> c. reduction in useful life;
> d. obsolescence; and
> e. any pre-loss damage including wear, tear, or deterioration; of the damaged part of the property.

(*Id*.).  (emphasis in original).

The Policy also contains the following "Appraisal" provision, in relevant part:

> 4. **Appraisal.** If **you** and **we** fail to agree on the amount of loss, either party can demand that the amount of loss be set by appraisal . . . At least 10 days before demanding appraisal, the party seeking appraisal must provide the other party with written, itemized documentation of a specific dispute as to the amount of the loss, identifying separately each item being disputed. . .
> h. Appraisal is only available to determine the amount of the loss of each item in dispute. The appraisers and the umpire have no authority to decide:
> (1) Any other questions of fact;
> (2) Questions of law;
> (3) Questions of coverage;
> (4) Other contractual issues; or
> (5) To conduct appraisal on a class-wide basis.

(*Id*.).  (emphasis in original).

Following Plaintiffs' reporting of Hurricane Sally damage to State Farm, a claim file was opened.  (Doc. 122).  Claims specialists Traci Slack, Huiping Yuan, Pattie Trim, and Christopher Rice, were involved with identifying damage related to the claim. (*Id*.). The parties greatly dispute the extent of the damage caused by Hurricane Sally. The record reflects that State Farm determined some damages from Hurricane Sally but excluded other damages as preexisting. On November 4, 2020, Plaintiffs were paid $6,166.52. This payment was based, in part, on the revised State Farm estimate which estimated the replacement cost value of $6,421.60 under Coverage A – Dwelling, $981.60 for tree debris removal and $7,563.99 for Coverage A – Other Structures. (*Id*.) Plaintiffs notified State farm that there were additional damages from Hurricane Sally not included in the repair estimate and ultimately, another inspection was requested by State Farm. (*Id*.)

On November 18, 2020, Claim Specialist Stanley Robinson ("Robinson") completed a third inspection of the Property.  (*Id*.).  Mr. Henderson and a representative of Baldwin County Roofing

were present. (*Id*.).  For the roof, Robinson noted that a roof replacement was warranted due to the wind damaged shingles scattered across the front and rear slopes, tree damage to shingles and nail holes from the temporary tarp being placed on the roof. (*Id*.). Robinson also noted several water stains in multiple rooms of the Property. (*Id*.).

Robinson revised the State Farm estimate to include the additional damage observed. (*Id*.). This resulted in a supplemental claim payment in the amount of $9,232.71 on November 22, 2020. (*Id*.). Robinson's revision to the State Farm estimate increased the Coverage A – Dwelling replacement cost value to $22,718.14 and the Coverage A – Other Structures replacement cost value to $10,828.31. (*Id*.). The total replacement cost value of State Farm's estimate at that point was $34,528.05. (*Id*.). Three days later, State Farm issued another supplemental payment in the amount of $220 for five window screens that were damaged by Hurricane Sally. (*Id*.).  State Farm then issued an additional claim payment on November 30, 2020, for $626.56 for repairs to the front storm door and back door. (*Id*.). On December 12, 2020, the claim was reassigned to Claim Specialist Terrize Mills ("Mills"). (*Id*.). At that time, Plaintiffs had submitted a new contractor's estimate for tree removal and disposal. (*Id*.). Mills revised the State Farm estimate to include additional amounts for tree removal and issued a supplemental claim payment to Plaintiffs on December 14, 2020 for $7,951.60. (*Id*.).

In December 2020, Plaintiffs pointed out a discrepancy with the State Farm roof estimate. (*Id*.). Mills revised the State Farm estimate and issued a supplemental claim payment to Plaintiffs on December 29, 2020. (*Id*.). In February 2021, Plaintiffs informed State Farm of the need to replace the Hardie Siding and windows and submitted an estimate of $10,855 to replace all the windows and $2,959 to replace the front door and side-lites. (*Id*.). After speaking with Plaintiffs

and the company who prepared the estimate, Mills determined no revisions were necessary to the State Farm estimate. (*Id*.).

By early 2021, Plaintiffs submitted a signed contract with Baldwin County Roofing to install a metal roof for $11,549.28, which required the State Farm estimate to be revised. (*Id*.). Plaintiffs additionally requested a new Claims Specialist to handle their claim. (*Id*.). Claim Specialist Matthew Carroll ("Carroll") was assigned and contacted Plaintiffs in February 2021. (*Id*.). Thereafter, Carroll received a revised estimate from Baldwin County Roofing and revised the State Farm estimate to reflect the release of depreciation (RCV) and building code items for the roof. (*Id*.). With these revisions, a supplemental claim payment was issued to Plaintiffs on March 6, 2021 for $7,670.55. (*Id*.).

The Parties continued to disagree as to the damage to the siding and windows and another inspection by Walter Jackson ("Jackson") was scheduled for March 31, 2021. (*Id*.). Following the inspection, Jackson could not definitively confirm if the damage to the windows was caused by Hurricane Sally. (*Id*.). Jackson and Carroll ultimately decided that it would be beneficial to Plaintiffs to have an independent engineer inspect the Property and provide an expert opinion as to what damage was caused by Hurricane Sally. (*Id*.). The claim was ultimately assigned to Wehrman Investigative Engineering ("WIE") for an engineer inspection. (*Id*.). Joel Wehrman, P.E., inspected the Property on May 20, 2021, and prepared a report that was provided to State Farm on May 26, 2021. (*Id*.).

Jackson reviewed the WIE report and confirmed that all the items at issue had been addressed by Wehrman, who determined that the cause of loss for the various items at issue was unrelated to Hurricane Sally. (*Id*.). Jackson noted that he was closing the claim and that there

5

were no necessary revisions to the State Farm estimate. (*Id*.). Thereafter, Plaintiffs submitted additional evidence of chimney damage to State Farm, State Farm sent the evidence to Wehrman for review, and Wehrman amended his report to include that his opinions were not changed after reviewing the additional evidence. (*Id*.). Thereafter, State Farm informed Plaintiffs of Wehrman's conclusions. After Plaintiffs indicated they did not agree with the assessment, State farm indicated that if Plaintiffs hired their own engineer, it would send any resulting report to Wehrman for further review. (*Id*.).

State Farm sent Plaintiffs a denial letter on August 19, 2021, explaining that the outstanding items being claimed by Plaintiffs would not be covered and were excluded by the terms of the Policy. (*Id*.). The letter noted that the WIE report outlined specific areas that had damage resulting from wear, tear, deterioration and rot. (*Id*.). The letter set forth the specific Policy exclusions and explained that these causes of loss are excluded by the Policy. (*Id*.).

On December 9, 2021, State Farm received an engineering report prepared by Joe Asarisi, P.E. ("Asarisi"). According to the report, Asarisi was asked to determine the extent of the damage to the Property from Hurricane Sally. (*Id*.). The areas of damage identified by Asarisi were a crack in the wall of the office; damage to the window in the office; moisture damage to a wall in the office; and a broken roof rafter. (*Id*.).

A State Farm Team Manager compared the Asarisi and Wehrman engineering reports on December 10, 2021 and noted a conflict between the reports. (*Id*.). Asarisi's report was then sent to Wehrman for review. (*Id*.). WIE provided its second addendum report on December 16, 2021. (*Id*.). In the report, Wehrman noted that he had reviewed an undated letter/report from Baldwin County Roofing and the Asarisi report. (*Id*.). In his second addendum report, Wehrman addressed

the additional information provided and explained why it did not impact his prior opinions. (*Id*.). Wehrman concluded his report by noting that there was no change to his original conclusions and recommendations. (*Id*.).  Claim Specialist James Fowlkes ("Fowlkes") contacted Plaintiffs on January 11, 2022, and explained the determinations in the second WIE addendum report. (*Id*.). Fowlkes advised that State Farm's claim decision would remain the same. Plaintiffs expressed their disagreement with the WIE engineering report and requested a manager contact them. (*Id*.). After several more communications and continued discussions relating to damages, Plaintiffs claim was reassigned to Claim Specialist Marlon Moore ("Moore"). (*Id*.). After receiving additional information relating to the costs of repairing the roof, Moore agreed to amend the State Farm estimate to include some siding, a flu cap and chase. (*Id*.). Moore updated the State Farm estimate to reflect these items and issue a supplemental claim payment to Plaintiffs on May 31, 2022 for $1,066.71. (*Id*.).

On August 8, 2022, Lydell Johnson ("Johnson") of Property Claims Damage Consulting ("PCDC") emailed a repair estimate to State Farm that totaled $128,530.41. (*Id*.). On August 19, 2022, Johnson emailed a demand for appraisal to State Farm. (*Id*.). The demand for appraisal identified Johnson as Plaintiffs' appraiser. (*Id*.). Claim Specialist Mark Lopez ("Lopez") sent a letter to Plaintiffs on September 9, 2022, explaining that appraisal would not be appropriate under the facts of this claim. (*Id*.) Specifically, Lopez advised that appraisal cannot be used to resolve disputes regarding coverage. (*Id*.). On August 16, 2023, State Farm received a letter of representation by Plaintiffs' counsel. (*Id*.).

Ultimately, State Farm estimated the damage covered under the Policy as follows:

Coverage A – Dwelling: $25,100.65
Coverage A – Other Structures $18,761.51
Coverage B – Contents: $6,402.41
Other Coverages: $1,000.00
Total: $51,264.57

(*Id*.).   After applying the policy deductible and depreciation, Plaintiffs were paid $37,301.55.

The instant action was filed on December 21, 2023 and asserts claims against State Farm for breach of contract, bad faith, negligent hiring/training, and appraisal. (Doc. 1-2).

In addition to the pending motion for Summary Judgment, State Farm also filed a motion to exclude Plaintiffs' expert, Byron Johnson, based in part on Plaintiffs' failure to meet the disclosure requirements of Fed. R. Civ. P. 26(a)(2) and Fed. R. Civ. P. 37. (Doc. 123). Plaintiffs opposed the motion (Doc. 146) and additionally filed a motion to supplement their disclosures. (Doc. 145). The undersigned orally granted State Farm's motion (Doc. 123) and denied Plaintiffs' motion (Doc. 145) at the hearing on March 23, 2026.  For the sake of clarity, and because the instant motion overlaps with the motions relating to Johnson to some degree, the Court will briefly address the grounds on which Johnson was excluded. [2]

Pursuant to the Court's Rule 16(b) Scheduling Order (Doc. 72), Plaintiffs' expert disclosures were due on or before June 2, 2025. Plaintiffs timely designated Byron Lydell Johnson ("Johnson") through an attorney-prepared disclosure (Doc. 146-2) and submitted a replacement cost value ("RCV") repair estimate dated September 26, 2024 (Doc. 122-11). Notably, no Rule 26(a)(2)(B) report was provided for Johnson.  No motion to amend expert disclosure was filed

---

[2] To the extent not addressed in this Order, the Court adopts the grounds for exclusion of Johnson as set forth in Defendant's motion and related filings.

until after State Farm filed its motion to exclude with its summary judgment filings.

If an expert witness is retained or specially employed to provide expert testimony in a case, Rule 26(a) requires that the expert disclosure come with a written report—prepared and signed by the witness—that contains:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
> (ii) the facts or data considered by the witness in forming them;
> (iii) any exhibits that will be used to summarize or support them;
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
> (vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B). Rule 26(e) requires that a party supplement or correct its disclosure in a timely manner if it is materially incomplete or incorrect and "if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. Proc. 26(e).

Under Federal Rule of Civil Procedure 37(c)(1), a party that violates Rule 26's disclosure requirements could be prohibited from using the challenged information or witness, unless the non-disclosure was substantially justified or is harmless. Courts consider five factors to determine whether a failure to disclose was substantially justified or harmless:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to 1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the non-disclosing party's explanation for its failure to disclose the evidence.

*Bendik v. USAA Cas. Ins. Co.*, 2019 WL 9466018, at *2 (M.D. Fla. Oct. 25, 2019) (collecting cases).

9

The non-producing party has the burden of showing that its actions were substantially justified or harmless. *Schambeau Properties, LP v. Waffle House, Inc.*, 2011 WL 13136819, at *2 (S.D. Ala. Oct. 20, 2011)

The Court has reviewed the parties' submissions on the issue of Johnson and appreciates Plaintiffs' argument that any omission of an expert report was harmless error given Johnson's lengthy involvement in this dispute and State Farm's knowledge of his role.  However, the Court finds exclusion to be appropriate.  First, there is no dispute that Johnson did not prepare or submit to State Farm and expert report as required by Rule 26(a)(2)(B).  Instead, he provided only a repair estimate which is insufficient. *See Hickey v. State Farm Fire and Casualty Company*, 2023 WL 6370915, at *12 (S.D. Ala., 2023) (this Court observed that an expert's repair estimate "did not provide his opinion or bases for any opinion as to causation" and his report did not provide a complete statement of his opinions as to causation and the bases and reasons for those opinions."). To date no explanation has been provided to the Court for this failure.  Accordingly, the Court cannot find that the failure was substantially justified.

The Court understands Plaintiffs' argument that it is only fair to allow Johnson to offer his expert opinions because State Farm's adjusters are able offer their opinions without providing expert reports.  However, such a position is unconvincing in light of the Federal Rules.  Second, the fact that Johnson was identified to and deposed by State Farm, did not cure Plaintiffs' failure to provide an expert report to State Farm or render the failure harmless.  Instead, State Farm was forced to depose Johnson without the benefit of his opinions or the basis therefor.  Moreover, the deposition transcripts submitted to this Court indicate that Johnson testified he did not review the claim file, policy, or engineering reports, in contradiction to the attorney prepared

10

summary of his anticipated testimony disclosed to State Farm.  As a result, his deposition testimony did not clearly explain the basis for his opinions.  Finally, although the Court is sympathetic to Plaintiffs' position that State Farm was not harmed because it files motions to exclude and motions for judgment in practically every case, the docket reflects that in this case, State Farm has filed and responded to multiple motions relating to the exclusion of Johnson as part of its litigation strategy.  Moreover, the Court recognizes that to allow Plaintiffs to supplement their Rule 26 disclosures at this late stage of litigation will also likely result in the need to re-open discovery, re-litigate motions to exclude and motions for summary judgment, and reschedule the pre-trial and trial settings.  The Court cannot say then that Plaintiffs' failure to satisfy Rule 26 is harmless.  Accordingly, Johnson is excluded from testifying as an expert witness.

## II.       Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted: "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The trial court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  "The mere existence of some evidence to support the non-moving party is not sufficient for denial of summary judgment; there must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.' " *Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002) (quoting *Anderson*, 477 U.S. at 249). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, at 249-250. (internal citations omitted).

11

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *See Anderson*, 477 U.S. at 251-252. The moving party bears the burden of proving that no genuine issue of material fact exists. *O'Ferrell v. United States*, 253 F.3d 1257, 1265 (11th Cir. 2001). In evaluating the argument of the moving party, the court must view all evidence in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in its favor. *Burton v. City of Belle Glade*, 178 F.3d 1175, 1187 (11th Cir. 1999). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B&B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992) (citing *Mercantile Bank & Trust v. Fidelity & Deposit Co.*, 750 F.2d 838, 841 (11th Cir. 1985)).

Once the movant satisfies his initial burden under Rule 56(c), the non-moving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." *Howard v. BP Oil Company*, 32 F.3d 520, 524 (11th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). Otherwise stated, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). The non-moving party "may not rely merely on allegations or denials in its own pleading; rather, its response .... must be by affidavits or as otherwise provided in this rule be set out specific facts showing a genuine issue for trial." *Vega v. Invsco Group, Ltd.*, 2011 WL 2533755, *2 (11th Cir. 2011). "A mere 'scintilla' of evidence supporting the [non-moving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that

party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted).  "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 at 587 (1986) (internal quotation and citation omitted).

### III.    Analysis

#### A.    Appraisal

Counts Three and Four of Plaintiffs' Complaint relate to Plaintiffs' assertion that Defendant improperly denied Plaintiffs' demand for appraisal.  (Doc. 1-2).  Defendant seeks summary judgment as to those counts on two grounds: (1) Appraisal has been waived and (2) Appraisal is not available under the terms of the Policy because coverage and scope of damage are in dispute. (Doc. 122).  In response, Plaintiffs argue that State Farm's continual delays in the claims process and refusal to pay the Plaintiffs' claim coupled with its continued refusal to go to appraisal forced them into this litigation defeating the waiver argument.  (Doc. 144).  Separately, Plaintiffs contend appraisal is appropriate because the issue here is one of costs, not coverage. (*Id*.).  The Court will address each argument in turn.

##### 1.    Plaintiffs have waived the right to Appraisal

The policy at issue contains the following "Appraisal" provision, in relevant part:

4. **Appraisal**. If **you** and **we** fail to agree on the amount of loss, either party can demand that the amount of loss be set by appraisal . . . At least 10 days before demanding appraisal, the party seeking appraisal must provide the other party with written, itemized documentation of a specific dispute as to the amount of

13

the loss, identifying separately each item being disputed. . .

      h. Appraisal is only available to determine the amount of the loss of each item in dispute. The appraisers and the umpire have no authority to decide:

          (1) Any other questions of fact;
          (2) Questions of law;
          (3) Questions of coverage;
          (4) Other contractual issues; or
          (5) To conduct appraisal on a class-wide basis.

(Doc. 122).

In determining whether there has been a waiver of an appraisal clause, the Alabama Supreme Court applies the same standard that is used for determining whether an arbitration clause has been waived. *See Rogers v. State Farm Fire and Cas. Co.*, 984 So. 2d 382, 387 (Ala. 2007). A party waives its right to an appraisal if it "substantially invokes the litigation process and thereby substantially prejudices the [opposing] party." *Id*. (quoting *Companion Life Insurance Co. v. Whitesell Manufacturing, Inc.,* 670 So.2d 897, 899 (Ala.1995). "Whether a party's participation in an action amounts to an enforceable waiver of its right to arbitrate depends on whether the participation bespeaks an intention to abandon the right in favor of the judicial process and, if so, whether the opposing party would be prejudiced by a subsequent order requiring it to submit to arbitration." *Companion Life Ins. Co.*, 670 So. 2d at 899. "Prejudice has been found in situations where the party seeking arbitration allows the opposing party to undergo the types of litigation expenses that arbitration was designed to alleviate." *Hales v. ProEquities, Inc.*, 885 So. 2d 100, 105–106 (Ala. 2003) (quoting *Morewitz v. W. of England Ship Owners Mut. Prot. & Indem. Ass'n (Luxembourg)*, 62 F.3d 1356, 1366 (11th Cir. 1995)). Sufficient prejudice to infer waiver may be found if the party seeking the stay for arbitration "took advantage of judicial discovery procedures not available in arbitration." *Id*. at 106 (quoting *Carcich v. Rederi A/B Nordie*, 389 F.2d

14

692, 696 n.7 (2nd Cir. 1968)).

The Court agrees that the instigation of litigation may not always, on its own, trigger a waiver of appraisal. However, the instant action has been pending in this Court for over a year, discovery has taken place, dispositive motions have been filed, the pre-trial conference is less than a month away and trial is scheduled to begin in May 2026. Moreover, at no point in this litigation have Plaintiffs sought to compel appraisal. This is true, even though the appraisal issue was raised in August 2024, during the hearing on the then pending motion for remand, and the Court offered "maybe there's a way to put that in front of the Court for a decision earlier on rather than waiting until dispositive motion deadline". (*See* Doc. 44). As a result of the length of this litigation and the costs of litigation incurred, and the Court is satisfied that appraisal has been waived. *See e.g. Paw Paw's Camper City, Inc. v. Hayman*, 973 So. 2d 344, (Ala. 2007)(contractual right to arbitration waived by party participating for ten months in litigation brought by plaintiffs for breach of contract and fraud in the procurement of an arbitration agreement, including participating in discovery without objection, and having the case set for trial without objection, before moving to compel arbitration.)

### 2.    Appraisal is not Appropriate

Even assuming Plaintiffs have not waived the right to appraisal, summary dismissal of Plaintiffs' appraisal related claims remains warranted because the instant action involves coverage and loss disputes.

An appraiser's duty under an appraisal clause in a homeowners' policy is limited to determining the amount of loss. *Rogers v. State Farm*, 984 So. 2d 382, 392 (Ala. 2007)(even though the insured and insurer agreed that tornado damage was a covered loss, and that the

tornado had damaged the home, the disputes over the cause of damage to brick veneer and foundation were cause of loss disputes); s*ee also, Caribbean I Owners' Ass'n v. Great Am. Ins. Co.*, 619 F. Supp. 2d 1178, 1183 (S.D. Ala. 2008)(applying *Rogers*, plaintiff's claim of appraisal was dismissed and motion to compel appraisal denied where there was an "obvious need for a determination of the extent to which the damage to plaintiff's property was caused by wind-driven rain or by pre-existing construction defects"); *see also Luce v. Certain Underwriters at Lloyd's London*, 2020 WL 2564680, at *5 (S.D. Ala. May 20, 2020)(lifting stay where defendant/insurer has shown that there is a dispute over coverage and causation, plaintiff has offered no argument to the contrary, and the appraisal process cannot resolve disputes over causation and coverage as a matter of law). The amount of loss is the monetary value of the property damage. *Rogers*, 984 So. 2d at 392. Appraisers are not vested with the authority to decide questions of causation, coverage, or liability.  In other words, appraisal is appropriate only when the sole dispute is the value of the agreed upon damages. *Id*.

The Court appreciates Plaintiffs' attempt to categorize the dispute here as an amount of loss, but the record clearly indicates that the parties disagree as to whether a significant portion (the unpaid portion) of Plaintiffs' claim was caused by Hurricane Sally or some other cause. Accordingly, the undisputed facts establish that in this litigation, a dispute of coverage exists. Because the Alabama Supreme Court has clearly delineated an appraiser's duty is "limited to determining the 'amount of loss'. . .", appraisal in this instance is unavailable. *See Haman Inc. v. Chubb Custom Insurance Co.*, 2021 WL 1208863, *10 (N.D. Ala. March 31, 2021) (quoting *Rogers* 984 So. 2d at (Ala. 2007).

16

### B.      Breach of Contract

Defendant seeks summary dismissal of Plaintiffs' breach of contract claim because there is no evidence of the Actual Cash Value ("ACV") of the repairs, the only damages available under the contract.  (Doc. 122).  Defendant's position is based, in part, on the exclusions of Johnson for his failure to provide a written expert report or calculate the ACV of the repairs.  In response, Plaintiffs do not dispute that they are entitled to the ACV of repairs under the contract.  However, argue they are not required to establish the Actual Cash Value of the repairs and summary judgment is not warranted.  (Doc. 144).

The material elements necessary to establish a cause of action for breach of contract under Alabama law are: "(1) a valid contract binding the parties; (2) the plaintiff['s] performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages." *Reynolds Metal Co. v. Hill*, 825 So. 2d 100, 105-106 (Ala. 2002) (citing *State Farm Fire & Cas. Co. v. Slade*, 747 So. 2d 293, 303 (Ala. 1999)).

The Court is not persuaded that summary judgment is warranted.  First, there is no dispute that the parties disagree as to the extent and amount of damages suffered to Plaintiffs' home by Hurricane Sally.  Second, although this Court has determined that Johnson may not testify as an expert in this action (based on his failure to comply with Rule 26), it remains that Johnson was hired by Plaintiffs to assist them with their claim with State Farm long before counsel was hired or litigation was filed.  As a result, Johnson's lack of "expert" status may not render him silent at trial.  Indeed, Plaintiffs have already indicated that he may be called as a "hybrid" witness. (*See* Doc. 154).  The extent of Johnson's testimony in this capacity is not currently before the Court.  Third, regardless of Johnson's exclusion, it remains that Plaintiffs have two other

named experts who will testify as to the damages to the Property caused by Hurricane Sally.

Fourth and finally, Defendant has pointed to no binding legal authority where summary judgment was granted in anticipation of a Plaintiff not being able to offer evidence of the ACV of repairs at trial. Certainly, if Plaintiffs fail to present evidence in support of their claim at trial, judgment as a matter of law may be warranted. But at this stage, with damages disputed and testimony unknown, dismissal is not warranted.

### C.    Bad Faith

Defendant seeks dismissal of Plaintiffs' bad faith failure to pay and investigate claims. (Doc. 122). First, it argues that because the breach of contract claims fail, the bad faith clams must fail too. (*Id*.). Next, it argues that the bad faith claim is barred by the statute of limitations. (*Id*.). Third, and finally, it argues Plaintiffs cannot show the absence of an arguable or debatable reason for State Farm's denial of any portion of their claims. (*Id*.). Plaintiffs argue the bad faith claim survives alongside the breach of contract claim, there is evidence of bad faith, and the claim is not time barred. (Doc. 144).

To survive summary judgment on a claim of bad faith, Plaintiffs must produce substantial evidence of the following elements:

> "(a) an insurance contract between the parties and a breach thereof by the defendant; (b) an intentional refusal to pay the insured's claim; (c) the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason); (d) the insurer's actual knowledge of the absence of any legitimate or arguable reason; (e) if the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim.

18

> In short, plaintiff must go beyond a mere showing of non-payment and prove a *bad faith* nonpayment, a nonpayment without any reasonable ground for dispute. Or, stated differently, the plaintiff must show that the insurance company had no legal or factual defense to the insurance claim."

*State Farm Fire & Cas. Co. v. Slade*, 747 So. 2d 293, 304 (Ala. 1999) (quoting *Nat'l Sec. Fire & Cas. Co. v. Bowen*, 417 So. 2d 179, 183 (Ala. 1982)) (emphasis in original).

A debatable or arguable reason is "a reason that is open to dispute or question." *Koch v. State Farm Fire & Cas. Co.*, 565 So. 2d 226, 229 n.4 (Ala. 1990). "When a claim is 'fairly debatable', the insurer is entitled to debate, whether the debate concerns a matter of fact or law." *Davis v. Cotton States Mut. Ins. Co.*, 604 So. 2d 354, 358–59 (Ala. 1992).  The burden on the plaintiff arguing the absence of a debatable reason is so great that, "in the 'normal' case, a plaintiff's bad faith claim may not be submitted to the jury unless she shows that she is entitled to directed verdict on the contract claim." *Alfa Mut. Fire Ins. Co. v. Thomas*, 738 So. 2d 815, 822 (Ala. 1999); *see Bonner v. Safeco Ins. Co. of Am.*, 458 F. Supp. 3d 1354, 1357–1358 (S.D. Ala. 2020) (referencing directed-verdict-on-the-contract standard on ordinary bad faith claim).

Whether an insurer is justified in denying a claim is measured by what was before it at the time the decision was made. *National Savings Life Ins. Co. v. Dutton*, 419 So. 2d 1357, 1362 (Ala. 1982). Because of this, and because many things happen between the time of denial and the time a case comes to trial, the plaintiff must show "that if the contract claim had been tried on the date of the denial, the plaintiff would have been entitled to a directed verdict; i.e., information received by the insurer after the date of the denial is irrelevant to the determination of whether the insurer denied at that date in bad faith." *Insurance Co. of N. Am. v. Citizensbank of Thomasville*, 491 So. 2d 880, 883 (Ala 1986) (emphasis in original).

There are certain "unusual and extraordinary" cases, often called "abnormal" bad faith cases, where the "directed-verdict-on-the-contract claim" standard is not applied. These cases have been limited to instances where the plaintiff produced substantial evidence showing that the insurer "(1) intentionally or recklessly failed to investigate the plaintiff's claim; (2) intentionally or recklessly failed to properly subject the plaintiff's claim to a cognitive evaluation or review; (3) created its own debatable reason for denying the plaintiff's claim; or (4) relied on an ambiguous portion of the policy as a lawful basis to deny the plaintiff' claim." *Slade*, 747 So. 2d at 306-307.

Even a claim of abnormal bad faith still requires proof of the third element of the tort of bad faith, i.e., the absence of a legitimate reason for denial. *State Farm Fire and Cas. Co. v. Brechbill*, 144 So. 3d 248, 258 (Ala. 2013). Thus, "a bad-faith-refusal-to-investigate claim cannot survive where the trial court has expressly found as a matter of law that the insurer had a reasonably legitimate or arguable reason for refusing to pay the claim at the time the claim was denied." *Id*. at 260. "[R]egardless of the imperfections of [the insurer's] investigation, the existence of a debatable reason for denying the claim at the time the claim was denied defeats a bad faith failure to pay the claim." *Id*. at 259 (internal quotes omitted, emphasis in original); *see Coleman v. Unum Grp. Corp.*, 207 F. Supp. 3d 1281, 1284 (S.D. Ala. 2016)(Steele, C.J.)("The *Brechbill* decision makes clear that the conditional fifth element is a potential substitute for the fourth element, but not for the third element, which the plaintiff must prove in every case.")

### 1. Bad Faith Claim is not subject to dismissal based on dismissal of breach of contract

Because this Court has determined that Plaintiffs' breach of contract claim, may move forward, Plaintiffs' bad faith claim need not be dismissed for lack of an underlying breach of

20

contract claim.

### 2. Bad Faith claim is subject to dismissal based on a lack of dispute that claim was investigated.

Defendant contends that summary judgment on Plaintiffs' bad faith claim is warranted because the material facts establish as a matter of law that State Farm had an arguable or debatable reason for denial of a portion of Plaintiffs' claim. (Doc. 122). More specifically, Defendant points out that State Farm conducted a thorough investigation of the claim by inspecting the Property on four occasions, inspecting all damage reported by Plaintiffs, and before finalizing its estimate, retaining an independent engineer to provide a professional opinion as to the damage caused by Hurricane Sally. The record also reflects that State Farm reviewed additional information submitted by Plaintiffs and had the same reviewed by the independent engineer. (*Id*.). In response, Plaintiffs argue that their bad faith claim should survive. For factual support, Plaintiffs' point to (1) the behavior of Claims adjuster Mills who, according to Plaintiffs, accused Mr. Henderson and his expert Guttenberg of lying about causation, (2) verbal assaults on Mr. Henderson's character by Claims Adjuster Trim wherein Trim made accusations that Mr. Henderson conducted business unprofessionally with his prior dealings with State Farm, including getting her in trouble with State Farm, (3) an argumentative and aggressive call from Mills regarding Mr. Henderson and Guttenberg lying, (4) an argument between Jackson and Guttenberg in the Property where Jackson questioned his credibility, belittled him, and intentionally interfered with the Hendersons' contractual relationship with him. (Doc. 144).

Even crediting the above facts relied on by Plaintiffs, State Farm is entitled to summary dismissal of Plaintiffs' bad faith claim because while the facts portray a less then amicable dispute

over the investigation of the claim, they do not negate the fact that an investigation took place or that there was an arguable basis for the result. Accordingly, Plaintiffs have presented no facts to support that State Farm lacked a legitimate reason for denial in this action. Moreover, the facts establish that State Farm investigated Plaintiffs' claim utilizing multiple adjusters and ultimately an engineer and paid Plaintiffs' claim to some extent based on its investigation. While Plaintiffs were and remain unsatisfied with the results of State Farm's investigation, the undisputed evidence establishes that State Farm had an arguable reason for its denial. As a result, Plaintiffs' bad faith claim is due to be dismissed.[3]

### D.    Negligent Hiring, Training, Supervision

At the hearing, Plaintiffs conceded summary judgment was warranted on this claim. Accordingly, Count IV is dismissed.

### IV.    Conclusion

For the reasons stated herein above, Defendant's Motion is **Granted in part and Denied in part.**

**DONE and ORDERED** this 9th day of April, 2026.

/s/ JEFFREY U. BEAVERSTOCK
CHIEF UNITED STATES DISTRICT JUDGE

---

[3] Defendants also contend that Plaintiffs' bad faith claim is time barred, which Plaintiffs vehemently opposes. However, because the Court agrees that there is no evidence of bad faith, it need not further discuss the timeliness of said claim.

22